CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
July 16, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSHUA ADAM HURLEY,  )<br>    Plaintiff,           ) | Case No. 7:24-cv-00605 |
| v.                    ) | |
|                       ) | By: Michael F. Urbanski |
| RN K. CORBIN, et al., ) | Senior United States District Judge |
|     Defendants.       ) | |

## MEMORANDUM OPINION

Joshua Adam Hurley, an inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against several individuals employed at the New River Valley Regional Jail (NRVRJ). By order entered December 6, 2024, the court advised Hurley that his amended complaint failed to comply with applicable pleading requirements and included improperly joined claims and defendants. ECF No. 18. The court gave him 30 days to file a second amended complaint that comported with the requirements set forth in the order. Hurley has since filed a second amended complaint, followed by five motions to amend, a list of supporting "facts," and a separate list of the defendants he intends to name with respect to each claim. See ECF Nos. 19, 21, 22, 23, 24, 25, 26, and 28.

The court will grant the motions to amend for the limited purpose of reviewing the claims that Hurley wishes to pursue against K. Corbin, Kim Haug, O'Dell, Saunders, M. Trainer, Trueheart, Dr. Bhat, D. Quessenberry, and Hamilton.[1] For the reasons set forth

---

[1] Although the second amended complaint also included claims against Sgt. Rakes, Suzanne Holcomb, and B.T. Bell, Hurley has requested to "remove" those claims and have Rakes, Holcomb, and Bell "taken off" the docket. ECF No. 22. Accordingly, the claims against Rakes, Holcomb, and Bell will be dismissed without prejudice.

below, the claims against Corbin, Haug, O'Dell, Trainer, Dr. Bhat, Quessenberry, and Hamilton will be dismissed without prejudice for failure to state a claim upon which relief may be granted, and the claims against Trueheart and Saunders will dismissed without prejudice pursuant to Federal Rule of Civil Procedure 21.

## I. Summary of Allegations and Claims

In his most recent filings, Hurley asserts seven numbered claims for relief under 42 U.S.C. § 1983. Those claims are as follows:

> **Claim 1** (asserted against Corbin, Quessenberry, Hamilton, O'Dell, and Haug): On or about April 15, 2024, Hurley was denied his prescription for Suboxone, as evidenced by Informal Grievance (IG) 24-85.
>
> **Claim 2** (asserted against Corbin, Quessenberry, Hamilton, Haug, and Dr. Bhat): On or about September 6, 2024, Hurley was denied treatment for hepatitis C, as evidenced by IG 24-133.
>
> **Claim 3** (asserted only against Trueheart): On or about June 12, 2024, Trueheart provided false information that prevented Hurley from being placed in general population for more than 60 days, during which time he was confined in administrative segregation and subjected to more restrictive conditions of confinement.
>
> **Claim 4** (asserted against Hamilton, O'Dell, and Haug): On or about September 13, 2024, Hurley's request for the common fare diet was denied, as evidenced by IG 24-132.
>
> **Claim 5** (asserted against Quessenberry, Hamilton, Haug, and Corbin): On or about April 15, 2024, Hurley was denied the same form of bupropion (Wellbutrin) prescribed by an outside physician, as evidenced by Grievance 24-74.
>
> **Claim 6** (asserted only against Saunders): On or about September 28, 2023, Saunders put Hurley's safety at risk by moving him near an inmate on his enemy list.

>**Claim 7** (asserted against O'Dell and Trainer): On June 6, 2024, Hurley was denied due process as a result of a disciplinary violation being enforced more than 90 hours after the underlying conduct occurred.

See ECF No. 26 (listing the "claims . . . stated"); ECF No. 25 (listing the defendant(s) named with respect to each claim); ECF No. 24 (listing additional facts in support of the claims).

## II.     Legal Standards

### A.    Preliminary Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from a government officer or employee. 28 U.S.C. § 1915A(a). The court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A complaint filed by a pro se litigant must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed by a pro se litigant "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## B.     Joinder of Defendants

"The Federal Rules of Civil Procedure place limits on a plaintiff's ability to join multiple defendants in a single pleading." Simpson v. Youngkin, No. 3:23-cv-00032, 2024 WL 943456, at *2 (E.D. Va. Mar. 5, 2024) (citing Fed. R. Civ. P. 20(a)). Under Rule 20, defendants may be joined in a single action only if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). Courts have explained that "Rule 20 permits joinder of 'all reasonably related claims for relief . . . against different parties.'" Courthouse News Serv. v. Schaefer, 2 F.4th 318, 325 (4th Cir. 2021) (quoting Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)). The rule "does not authorize a plaintiff to add claims against different parties that present entirely different factual and legal issues." Sykes v. Bayer Pharms. Corp., 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (internal quotation marks and alterations omitted).

Although misjoinder of parties is not a ground for dismissing an entire action, a district court "may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. The rules governing joinder and misjoinder apply with equal force to pro se prisoner cases. Courts have emphasized that "unrelated claims against different defendants belong in separate lawsuits, not only 'to prevent the sort of morass' produced by multi-claim, multi-defendant suits . . . , but also to ensure that prisoners pay all fees required under the Prison Litigation Reform Act." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)). Prisoner complaints that contain

4

unrelated claims against different defendants "should be rejected, either by severing the action into separate lawsuits or by dismissing improperly joined defendants." Id. (internal quotation marks and citations omitted); see also Daker v. Head, 730 F. App'x 765, 768 (11th Cir. 2018) (explaining that a district court should have exercised its authority to dismiss improper defendants or sever unrelated claims since the pro se plaintiff asserted unrelated claims against unrelated defendants).

### III. Discussion

**A.    Dismissal of Claims 1, 2, 4, 5, and 7 under 28 U.S.C. § 1915A(b)(1)**

Corbin, Haug, O'Dell, Trainer, Dr. Bhat, Quessenberry, and Hamilton are named as defendants with respect to Claims 1, 2, 4, 5, and/or 7. For the following reasons, the court concludes that each of these claims must be dismissed for failure to state a claim upon which relief may be granted.

**1.    Claims of Inadequate Medical Treatment (Claims 1, 2, and 5)**

In Claims 1, 2, and 5, Hurley asserts various claims of inadequate medical treatment. State court records available online indicate that Hurley was a pretrial detainee at the time of the events giving rise to his claims.[2] Accordingly, the claims of inadequate medical treatment are governed by the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause protects pretrial detainees from actions by government officials that are "not rationally related to a legitimate nonpunitive purpose or that . . . appear excessive in relation to that purpose." Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)

---

[2] See, e.g., Commonwealth v. Hurley, Nos. CR24000301-00, CR24000302-00 (Wythe Cnty. Cir. Ct.), available at https://eapps.courts.state.va.us/CJISWeb/MainMenu.do (last accessed July 9, 2025).

(internal quotation marks and citation omitted). Pretrial detainees can state a claim under the Fourteenth Amendment, based on a purely objective standard, for correctional officials' deliberate indifference to a serious medical need. Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). "To state a claim for deliberate indifference to a medical need, . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4), as a result, the detainee was harmed." Id. Allegations of mere negligence are "not enough" to meet this standard. Id. at 611–12.

    a.    **Claim 1**

In Claim 1, Hurley alleges that he was denied his prescription for Suboxone in April 2024, as evidenced by IG 24-85. In that informal grievance, Hurley requested to receive Suboxone on a daily basis since he had a prescription for the medication from an outside medical provider. See ECF No. 1-1 at 24. Quessenberry responded to the informal grievance, and Corbin responded to the formal grievance that Hurley filed next. Id. at 24–25. The defendants advised Hurley that he did not qualify for Suboxone treatment under the applicable policy because his "urine drug screen was positive for amphetamines [and] methamphetamines." Id. at 25. Hurley appealed the formal grievance to NRVRJ Superintendent Haug, who determined that the grievance was without merit. See id. at 26 ("Our policy states that you must be successfully doing the treatment program on the outside

6

to continue it while incarcerated. You failed your drug screen and this disqualifies you for the program.").

While Hurley obviously disagrees with the decision to deny his request for Suboxone, he has not alleged sufficient facts to plausibly suggest that the named defendants violated the Fourteenth Amendment. The mere fact that he was prescribed the medication at some point in the past by a different provider is insufficient to show that the defendants acted with deliberate indifference to a serious medical need. Hurley does not allege that any of the defendants knew or should have known that refusing to dispense Suboxone "posed an unjustifiably high risk of harm" or that he suffered any harm as a result of the defendants' actions or inactions. Short, 87 F.4th at 611. Consequently, Claim 1 fails to state a claim upon which relief may be granted.

    b.  **Claim 2**

In Claim 2, Hurley alleges that he was denied treatment for hepatitis C in September 2024, as evidenced by IG 24-133. In that informal grievance, Hurley asserted that he had been denied treatment for hepatitis C by Dr. Bhat. See ECF No. 9 at 1. In response, Quessenberry noted that Hurley had been seen by Dr. Bhat on September 6, 2024, and that Hurley would be "following up with him." Id. Hurley then filed a formal grievance regarding the matter, to which Corbin responded as follows:

> You have a follow-up scheduled with Dr. Bhat to discuss this matter. At this time, it is not medically necessary for the NRVRJ to treat your Hep C. You will continue to be monitored in chronic care clinic.

Id. at 2. Hurley appealed the grievance to Haug, and Haug determined that the complaint was without merit:

7

>> Thankfully, your labs continue to be good and there has been no need for treatment. You do have a follow up with Dr. Bhat and medical will continue with your chronic care to monitor your labs.

Id. at 3.

Hurley has not alleged facts sufficient to establish that the named defendants violated the Fourteenth Amendment by declining to treat his hepatitis C. He does not identify the medical treatment he believes he should have received, much less plausibly allege that the defendants knew or should have known that he faced a substantial risk of harm as a result of not receiving such treatment. To the extent Hurley disagrees with the medical providers' method of monitoring his hepatitis C, such disagreement is insufficient to establish a constitutional violation. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). Thus, Claim 2 fails to state a claim upon which relief may be granted.

### c. Claim 5

In Claim 5, Hurley alleges that he was denied the same form of bupropion (Wellbutrin) prescribed by an outside medical provider, as evidenced by Grievance 24-74. In that grievance, Hurley complained about receiving the medication in a crushed form. In response, Corbin advised Hurley that he was "getting the same dose and medication" and that the medical department "crush[es] all Wellbutrin." ECF No. 7-1 at 3. Likewise, in response to an informal grievance, Quessenberry advised Hurley that "[a]ll Wellbutrin is crushed in the facility." Id. at 4.

8

Hurley does not allege that he suffered any harm as a result of receiving Wellbutrin in a crushed form. Nor does he allege that any of the defendants knew or should have known that crushing the medication posed an unjustifiably high risk of harm. Consequently, Claim 5 fails to state a claim upon which relief may be granted.

### 2. Claims Arising from the Denial of Hurley's Religious Diet Request

In Claim 4, Hurley alleges that his request for the common fare diet was denied in September 2024, as evidenced by IG 24-132. In that informal grievance, Hurley asserted that he would like to be placed on the common fare diet to accommodate the beliefs associated with his unspecified religion. See ECF No. 10 at 5. In response, a shift supervisor informed Hurley that the common fare diet was not offered at the jail. Id. Hurley then filed a formal grievance requesting the common fare diet. Id. at 3. An unidentified deputy superintendent determined that the grievance was without merit. Id. The staff member explained that "[t]he NRVRJ does not offer [the] common fare diet" but that it does "offer a religious tray approved through the chaplain." Id. Hurley appealed the grievance to Haug, who provided the following response: "Please place a request to the chaplain to speak with him about a religious tray. We do not offer a common fare diet." Id. at 2. Hurley claims that the denial of his request for the common fare diet violated his right to equal protection under the Fourteenth Amendment and his First Amendment "right to kosher foods." ECF No. 24 at 1.

The common fare diet is the name of a religious diet offered to inmates in the custody of the Virginia Department of Corrections. See, e.g., Wall v. Wade, 741 F.3d 492, 494 (4th Cir. 2014); Madison v. Riter, 355 F.3d 310, 313 (4th Cir. 2003). To the extent Hurley claims that defendants deprived him of equal protection by denying his request for the diet, he fails to

9

state a claim upon which relief may be granted. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). "This does not mean, however, that all prisoners must receive identical treatment and resources." Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013) (citing Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)). To establish a violation of the Equal Protection Clause, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011).

Hurley has not alleged facts sufficient to satisfy either element. He does not allege that he was treated differently from any similarly-situated inmate at the NRVRJ or that any of the named defendants acted with a discriminatory intent or purpose. Thus, he has failed to state a plausible violation of the Equal Protection Clause.

Hurley has also failed to state a plausible violation of the Free Exercise Clause of the First Amendment. "To make a Free Exercise claim, a prisoner must first show, as a threshold matter, that a prison practice or regulation violates his Free Exercise rights before showing that the prison's policies are not reasonably related to legitimate penological interests." Firewalker-Fields v. Lee, 58 F.4th 104, 114 (4th Cir. 2023) (internal quotation marks omitted). In particular, "an inmate, as a threshold matter, must demonstrate: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019) (quoting Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018)).

10

Here, Hurley's filings do not identify his particular religion, much less plausibly suggest that a sincere religious belief has been substantially burdened by the denial of his request for the common fare diet. Thus, he has not made the threshold showing required to state a claim under the Free Exercise Clause of the First Amendment.

Additionally, such claim "require[s] a showing of 'conscious or intentional interference' with the plaintiff's rights." Wall v. Wade, 741 F.3d 492, 499 n.11 (4th Cir. 2014) (quoting Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006)); see also Lovelace, 472 F.3d at 201 (holding that "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause"). The record reflects that Haug and other staff members recommended that Hurley inquire about receiving a religious tray approved by the chaplain. Hurley's filings do not set forth any facts from which the court could reasonably infer that Haug or any other defendant consciously or intentionally interfered with his right to freely exercise his religion. Thus, Claim 4 fails to state a claim upon which relief may be granted.

### 3. Due Process Claim Asserted in Claim 7

In Claim 7, Hurley alleges that he was denied due process as a result of a disciplinary violation being enforced more than 90 hours after the underlying conduct occurred. Although he does not identify the penalty imposed for the violation, he alleges that "[p]unishment was in fact enforced." ECF No. 24 at 1.

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property

11

interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015).

As a pretrial detainee, Hurley is "entitled . . . to procedural due process in connection with any 'punishment' imposed on him" at the NRVRJ. Dilworth v. Adams, 841 F.3d 246, 252 (4th Cir. 2016). "The level of procedural due process to which a pretrial detainee is entitled in a particular situation, however, depends on context." Williamson v. Stirling, 912 F.3d 154, 175 (4th Cir. 2018). "More specifically, a pretrial detainee's procedural protections vary according to whether a restriction was imposed for disciplinary or administrative purposes." Id. If a restriction is imposed for disciplinary purposes, as is alleged here, "the detainee is entitled to notice of the alleged misconduct, a hearing, and a written explanation of the resulting decision." Id.; see also Dilworth, 841 F.3d at 253–54 (applying the procedural requirements set forth in Wolff v. McDonnell, 418 U.S. 539, 566 (1974)).

Hurley does not allege that the named defendants deprived him of the procedural protections required under the Due Process Clause. Instead, he takes issue with the fact that "90 hours . . . passed before the rule violation was enforced." ECF No. 26 at 1; see also id (asserting that the underlying incident occurred on June 2, 2024, and that the rule violation was not enforced until June 6, 2024). However, due process "does not require that a charging instrument be prepared within a certain time period or that the disciplinary hearing be conducted within any specific time period." Boyd v. Anderson, 265 F. Supp. 2d 952, 963 (N.D. Ind. 2003); see also Huang v. Mahsukhani, No. 4:16-cv-01269, 2016 WL 6694530, at *3 (D.S.C. Nov. 15, 2016) (noting that "the only time limit set forth in Wolff is the requirement that an inmate receive at least 24 hours after written notice of the charges to prepare for a

12

hearing"). Even if the timing of the disciplinary charge violated the jail's own disciplinary policy, a mere policy violation does not give rise to a § 1983 claim for denial of due process. See Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) ("Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution. If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.") (footnote omitted).

**B.     Dismissal of Claims 3 and 6 under Rule 21**

In Claim 3, Hurley alleges that Truehart provided false information that prevented him from being placed in general population for more than 60 days, during which time he was confined in administrative segregation and subjected to more restrictive conditions of confinement. In Claim 6, Hurley alleges that Saunders put his safety at risk by moving him near an inmate on his enemy list. Truehart and Saunders are not named in connection with the other claims asserted by Hurley, and the claims against Truehart and Saunders arise from entirely different events that occurred at different times at the NRVRJ. Consequently, the court concludes that the claims against Truehart and Saunders are not properly joined in the same action. Hurley was previously advised that any amended pleading must "comply with the joinder requirements of Rule 20(a)(2)," ECF No. 18 at 2, and he has not complied with that order.

13

If parties are not properly joined in the same action, "the court may at any time, on just terms," dismiss a party. Fed. R. Civ. P. 21. "The court may also sever any claim against a party." Id. Under the circumstances presented here, the court finds it appropriate to dismiss the claims against Truehart and Saunders without prejudice and allow him to file a new complaint against each defendant in a separate action. Hurley still has approximately two months to file a timely § 1983 claim against Saunders, and he has more than ten months to file a timely claim against Truehart. See DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (discussing the statute of limitations applicable to claims under 42 U.S.C. § 1983). Thus, dismissing the claims against Truehart and Saunders without prejudice will not cause any "gratuitous harm" to Hurley. Elmore v. Henderson, 227 F.3d 1009, 1012 (7th Cir. 2000); see also DirecTV, Inc. v. Leto, 467 F.3d 842, 846 (3d Cir. 2006) (explaining that "a court must analyze the consequences of a dismissal on a claimant's ability to meet the statute of limitations prior to choosing dismissal over severance"). To assist him, the court will direct the Clerk to send him copies of a complaint form to use in filing a separate action against each of these defendants, should he elect to do. Proceeding with a single operative complaint against each defendant, rather than with a collection of allegations spread across multiple documents, will streamline the resolution of Hurley's claims.

## IV. Conclusion

For the reasons set forth above, Hurley's motions to amend, ECF Nos. 21, 22, 23, 26, and 28, are **GRANTED** for the purpose of reviewing the claims that Hurley wishes to pursue against Corbin, Haug, O'Dell, Saunders, Trainer, Truehart, Dr. Bhat, Quessenberry, and Hamilton. The claims against Corbin, Haug, O'Dell, Trainer, Dr. Bhat, Quessenberry, and

14

Hamilton (Claims 1, 2, 4, 5, and 7) are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted, and the claims against Truehart and Saunders (Claims 3 and 6) are **DISMISSED** without prejudice under Rule 21. Because Hurley no longer wishes to pursue his claims against Rakes, Holcomb, and Bell, those claims are also **DISMISSED** without prejudice.

An appropriate order will be entered.

Entered: July 16, 2025

Michael F. Urbanski
U.S. District Judge
2025.07.16
10:28:08 -04'00'

Michael F. Urbanski
Senior United States District Judge

15